## Hughes *v.* Pennsylvania Railroad Company, Appellant.

*Common carriers—Limitation of liability—Conflict of laws—Contract.*

Where a contract containing a stipulation limiting liability for negligence on the part of a common carrier, is made in one state, but with a view to its performance, by transportation through or into one or more other states, it should be construed in accordance with the law of the state where its negligent breach causing injury occurs. If such a contract comes under construction in Pennsylvania and the injury has taken place within its limits, the contract is null and void.

Where a contract made in New York for the transportation of a valuable horse to a point in Pennsylvania contains a stipulation that the initial carriers and any connecting carrier shall not be liable for an amount in excess of $100, the limitation although good in New York, cannot be sustained in favor of a connecting carrier in Pennsylvania upon whose line the horse was injured.

In such a case an entry of judgment on a verdict for the full value of the horse is not in conflict with the interstate commerce act of congress.

MITCHELL and BROWN, JJ., dissent.

Argued Jan. 20, 1902. Appeal, No. 239, Jan. T., 1901, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1900, No. 39, on verdict for plaintiff in case of William Hughes and Benjamin F. A. Fleming, trading as Hughes & Fleming, v. Pennsylvania Railroad Company. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass for loss of a horse. Before SULZBERGER, J.
The opinion of the Supreme Court states the case.
Defendant presented these points:
That it was lawful in the state of New York for the carrier to limit its liability by a special contract for an injury resulting from its negligence; that said contract having been for a through consignment from Albany to Cynwyd, a place within this state, said contract must be considered in its entirety and is incapable of divisibility; that said contract having stipulated for an agreed valuation of the stock shipped, the parties must be governed by its terms throughout the entire route, as said contract must be interpreted and enforced here by the law of the place where it was made, and within which state it was partly performed; and that, consequently, the plaintiff is not entitled to recover in excess of the valuation agreed upon by the parties at the time of shipment. *Answer:* Refused. [1]

2. That the plaintiff is not entitled to recover in excess of $100. *Answer:* Refused. [2]

Verdict and judgment for plaintiff for $9,900. Defendant appealed.

*Errors assigned* were (1, 2) above instructions; (3) in entering judgment in conflict with the act of congress of February 4, 1887, entitled "An act to regulate commerce."

*John G. Johnson,* with him *Edwin Jaquette Sellers* and *David W. Sellers,* for appellant.—Irrespective of the effect of the interstate commerce act, a contract made in New York to transport merchandise through that state and to deliver the same in Pennsylvania, at a fixed valuation, because of a reduced rate, being valid in New York, is enforceable in Pennsylvania: Brown v. Camden & Atlantic R. R. Co., 83 Pa. 316; Burnett v. Penna. R. R. Co., 176 Pa. 45; Musser v. Stauffer, 192 Pa. 405; Fore-

paugh v. Delaware, etc., R. R. Co., 128 Pa. 217; Elkins v. Empire Transportation Co., 81 * Pa. 315; Morgan v. New Orleans, etc., R. R. Co., 2 Woods, 244; Hazel v. Chicago, etc., R. R. Co., 48 N. W. Repr. 926; Liverpool, etc., Steam Co. v. Phenix Ins. Co., 129 U. S. 397; Hale v. New Jersey Steam Navigation Co., 15 Conn. 538; Western, etc., R. R. Co. v. Exposition Cotton Mills, 81 Ga. 522.

A contract such as is described in the first proposition, is valid because made in accordance with the policy favored by the interstate commerce act.

If the law of Pennsylvania forbids the making of a contract, such as is described in the first proposition, it is unconstitutional because it interferes with the regulations of commerce prescribed by the interstate commerce act: Hall v. DeCuir, 95 U. S. 487; Wabash, St. Louis, etc., Ry. Co. v. Illinois, 118 U. S. 557; Cleveland, etc., Ry. Co. v. Illinois, 177 U. S. 514.

*A. S. L. Shields,* for appellee.—The learned court below committed no error in refusing to charge as requested in the defendant's first point. It correctly charged the jury that such a contract being invalid if made in Pennsylvania, because contrary to the policy of Pennsylvania law, is none the less invalid and unenforceable in this state when made by a Pennsylvania corporation elsewhere, and when the attempt is made to enforce it in Pennsylvania courts: Goldey v. Penna. R. R. Co., 30 Pa. 242; Penna. R. R. Co. v. Butler, 57 Pa. 335; Buffalo, Pittsburg etc., R. R. Co. v. O'Hara, 12 W. N. C. 473; Brown v. Camden, etc., R. R. Co., 83 Pa. 316; Barter v. Wheeler, 49 N. H. 9; Pittsburg, Cincinnati, etc., Ry. Co. v. Sheppard, 56 Ohio, 69; Forepaugh v. Delaware, etc., R. R. Co., 128 Pa. 217; Baum v. Birchall, 150 Pa. 164; Waverly National Bank v. Hall, 150 Pa. 466; Burnett v. Penna. R. R. Co., 176 Pa. 45; Musser v. Stauffer, 192 Pa. 398; Grogan v. Adams Express Co., 114 Pa. 523.

The learned court below did not err in declining to charge, " that the plaintiff is not entitled to recover in excess of $100 :" Weiller v. Penna. R. R. Co., 134 Pa. 310; Buck v. Penna. R. R. Co., 150 Pa. 170; Willock v. Penna. R. R. Co., 166 Pa. 184; Schaeffer v. Phila., etc., R. R. Co., 168 Pa. 209; Allam v. Penna. R. R. Co., 183 Pa. 174.

The third assignment of error involves a question of law which was not raised in the court below, therefore it will not be considered by this court: Simmond's Est., 19 Pa. 439; Allen Twp. Road, 18 Pa. 463; Lane v. Smith, 103 Pa. 415; Walls v. Campbell, 125 Pa. 346; Hartley v. Decker, 89 Pa. 470; Safe Deposit Bank v. Schuylkill County, 190 Pa. 188; Taylor v. Sattler, 6 Pa. Superior Ct. 229; Leech v. Leech, 21 Pa. 67; Convers v. Vanatta, 24 Pa. 257.

OPINION BY MR. JUSTICE POTTER, April 21, 1902:

The plaintiffs in this case were the owners of a valuable horse, which was shipped by their agent from Albany, New York, to Cynwyd, Pennsylvania.

The contract for transportation was made in Albany, with the New York Central Railroad, acting for itself and connecting carriers. The bill of lading provided that "no carrier shall be liable for loss or damage not occurring on its own road, or its portion of the through route." The horse was carried safely by the initial carrier to the end of its line, and delivered to the defendant company, by whom it was brought to Philadelphia; at this point the horse was badly injured by the negligence of defendant's servants, and the injuries thus received are the foundation of this action.

The defendant admitted liability, but claimed that the plaintiff was not entitled to recover in excess of $100. In support of this claim, it relied upon a printed form of a shipping contract, which was signed by plaintiff's agent at the time of shipment, and retained by the carrier. This contract contained a stipulation that the liability of the initial carrier and any connecting carrier should be limited in case of loss or damage to a horse, or mule, whether through negligence or otherwise, to an amount not exceeding $100.

At the trial, the court below declined to charge the jury that such a limitation of the amount of the damages was lawful in this case. The jury under the evidence found a verdict for $9,900, the full value of the horse.

The refusal of the court to charge that the contract of shipment, limiting the liability for negligence, was valid, and binding upon the plaintiff, is here assigned as error.

It is conceded that this contract is valid under the law of

New York, and that if the horse had been injured while in course of transportation through that state, the plaintiffs would have been limited to the sum of $100.

It is also conceded that such a contract, made in Pennsylvania, for transportation, between points within the state, would be void, as against the settled policy of this state. The question is not an open one with us. Nor does it matter whether the attempt be to limit the liability as in Ruppel v. Allegheny Valley Ry. Co., 167 Pa. 166, or to claim exemption entirely from liability, as in Willock v. Penna. R. R. Co., 166 Pa. 184.

But because the contract was made in New York, to be performed partly in New York, and partly in Pennsylvania, it is contended that the law of New York should govern the case.

It may be noted here, that while the contract contains an acknowledgment that Grady had the option to ship the horse at a higher rate, with increased liability, yet as a matter of fact no such offer was made. The evidence shows that the freight agent at Albany did not know the amount of the charges, and the blanks for the amounts were not filled in.

The case of Burnett v. Penna. R. R. Co., 176 Pa. 45, seems to be decisive of the question now before us. In that case the plaintiff was an employee of defendant at Trenton, New Jersey. He applied for and obtained free transportation from Trenton to Elmira, New York. He received two passes, one from Trenton to Philadelphia, which was not in evidence, and the other, an employee's trip pass, from Philadelphia to Elmira, by the terms of which he assumed all risks of accident. He was injured at Harrisburg, Pennsylvania, through the admitted negligence of the defendant's employees. It was proved at the trial that under the laws of New Jersey the contract by which the plaintiff in consideration of free transportation, assumed the risk of accident, was valid, and that in that state he could not recover; and it was conceded by the defendant that in Pennsylvania the decisions are otherwise, and that such a contract will not relieve a common carrier from responsibility for negligence. There, as in this case, the contract was valid in the state where made. The transportation was safely performed into this state, and the injury occurred within this state through the negligence of the carrier. It was held that the responsibility of the defendant was to be determined by the law of the

state where the contract was being performed, and where the negligence occurred; and recovery was allowed. In the present case, the facts are more strongly against the defendant, in that it is not the initial carrier under the contract, and the stipulation upon the part of each carrier was against liability for damages not occurring on its portion of the through route.

In Fairchild v. Phila. etc., R. R. Co., 148 Pa. 527, there was a contract for the transportation of a horse, from Washington, District of Columbia, through Pennsylvania to Harkimus, New Jersey. It was injured by the negligence of the defendant, while in Baltimore, Maryland. The contract contained a stipulation limiting the value of the horse to $100. Suit was brought to recover damages for the injury. The court below held the contract to be valid, and under instructions, a verdict was rendered for $105.50, and judgment entered thereon. This judgment was affirmed, this court saying, in a per curiam, "This written contract was made in the District of Columbia, and is to be interpreted by the lex loci contractus:" Forepaugh v. Delaware, etc., R. R. Co., 128 Pa. 217.

If, however, in the performance of the contract, the horse had been carried into Pennsylvania, and it had been injured in this state, the principle set forth in Burnett v. Railroad, supra, would no doubt have been applied and the limitation of liability held void. In the Fairchild case, nothing is said about the law of Maryland where the injury occurred, though as a matter of fact the limitation of liability was valid in that state as appears in Brehme v. Adams Express Co., 25 Md. 328. The Fairchild case when properly understood is authority only for the proposition, that a contract containing a limitation of liability, made in a state where it is valid, will be enforced in this state, where an injury occurs in the course of transportation through a state where such a contract is not contrary to public policy.

It is only an application of the doctrine of Forepaugh v. Delaware, etc., R. R. Co., 128 Pa. 217, to a slightly differing state of facts. The reference to Hart v. Penna. R. R. Co., 112 U. S. 331; 5 Sup. Ct. Repr. 151, could only have been to show the law of the District of Columbia. For in Grogan v. Adams Express Co., 114 Pa. 523, this court expressly refused to follow the Hart case.

A distinction may well be made, between contracts of a general nature, and those of common carriers of goods through several states.  Much stress is laid in the brief of appellants, upon the opinion of Justice BRADLEY in Morgan v. New Orleans, 2 Woods, 244.  The contract in that case was made in New York to be performed in an important part there; and in part by the building of a railroad in Louisiana; another important part was to be performed in Alabama, and perhaps other important parts in other states.  The court held that, where a contract is to be performed in several jurisdictions, there could be no presumption that the parties had in view the laws of each of these jurisdictions, as the law that was to govern the contract, and therefore held that it was governed by the law of New York where it was made.

But it will be noticed that the case did not involve the law of common carriers, but only a contract relating to a matter about which the parties were free to contract, and against which there was no public policy of any state.  The inquiry was therefore properly confined to ascertaining the intention of the parties to the agreement.

But a contract for the carriage of goods is not one as to which parties are entirely free to contract.  Judge SULZBERGER in his charge in this case, aptly said: "There are, however, limitations upon the right of contract.  There is a certain field of human activity over which the state assumes supreme control by virtue of its sovereignty, and when the state declares its policy, which we call public policy, upon these questions, then the right of private contract is utterly abolished to that extent."

It will not do, therefore, to apply to the contracts of common carriers, all the principles that may apply to other contracts.  When courts declare a contract void as against public policy, they are not declaring the intention of the parties, as in the ordinary case, but are acting under the obligation of the higher law, which requires the enforcement of that which is for the public good.

Where a contract containing a stipulation limiting liability for negligence, is made in one state, but with a view to its performance, by transportation through or into one or more other states, we see no reason why it should not be construed in accordance with the law of the state, where its negligent breach,

causing injury, occurs. If such a contract comes under construction, in a state like Pennsylvania whose policy prohibits such exemption, and the injury has occurred in a state where the contract is valid, the stipulation will be enforced, as in Forepaugh v. R. R. Co., and in Fairchild v. R. R. Co. But if the injury has taken place within its limits, it will declare the contract null and void, as in Burnett v. R. R. Co. In the Fairchild case, as the injury occurred in Maryland, this court enforced the law of that state; if the injury to the horse had been delayed until in the course of the journey, it had reached Pennsylvania, our own law of public policy would have controlled.

This principle is maintained in Barter v. Wheeler, 49 N. H. 9. In that case, the transportation was from Toledo, Ohio, to Concord, New Hampshire. The goods were lost on their passage through New York, and the court said that if it is to "be executed partially in New York, we perceive no reason why in respect to that part, the law of that state should not govern, and such is the doctrine laid down in Story on Contracts, sec. 655."

To the same effect is Pittsburg, etc., Ry. Co. v. Sheppard, 56 Ohio, 69. This principle involves no greater difficulty as to proof, than the attempt to recover under a limitation of liability. In either case, negligence is a fact to be proven as to time and place, as any other fact.

Careful consideration of the contract and of the evidence shows that the contract in this case was not entire, either as to the obligation of the carrier to transport or of the shipper to pay the freight. The New York Central Railroad made no contract for itself beyond its own lines; it acted as agent only for the connecting carrier. It is the same as though each carrier had separately agreed to transport over its own line. And the freight charges were shown to be made up of two distinct sums. One being the amount from Albany to Jersey City, and the other from Jersey City to Cynwyd. No case has come under notice, directly deciding that such a contract is severable. But in Wells v. Thomas, 27 Mo. 17, the ruling is such as to indicate that in the opinion of the court, the bill of lading issued in that case covering lines of several carriers, was not an entire contract.

The third assignment of error suggests that the entry of

judgment is in conflict with the interstate commerce act of congress. This seems to be an afterthought, as there is no indication in the record that this question was raised or considered in the court below. It is not apparent how the act can have any application to this case. It contains nothing bearing upon the validity of a contract limiting the liability of a railroad for loss or injury caused by negligence. The object of the act seems to be to secure continuous carriage, and uniform rates, and to compel the furnishing of equal facilities. We cannot see that the entry of judgment in this case interferes in any way with the legitimate exercise of interstate commerce.

Upon the case as a whole, there is nothing to show any bad faith upon the part of the shipper. He applied for the transportation of his horse upon a special car, and loaded him thereon, together with the traps and harness and a special attendant. There was no concealment, or any misrepresentation as to value. The shipper paid the carrier the amount asked of him. It does not appear that any bargain was made in advance, for a freight rate, nor was there any reason why the full rate, sufficient in the opinion of the carrier to cover the risk of transportation, should not have been charged and collected. The shipper should not be asked to pay for insurance against the negligence of the employees of the carrier. If protection of that nature was desired, the carrier was at liberty to procure it for itself, and at its own expense. It must be assumed also that both shipper and carrier knew the law of Pennsylvania, and had it in view when the contract was made. The facts were submitted to the jury in a charge which clearly and correctly stated the public policy of this state, with regard to the question under consideration.

The assignments of error are overruled, and the judgment is affirmed.

MITCHELL and BROWN, JJ., dissent.